UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DAVID SMITHERS,

        Petitioner,

           v.                      CAUSE NO. 3:18-CV-1033-JD-MGG

WARDEN,

        Respondent.

OPINION AND ORDER

David Smithers, a prisoner without a lawyer, filed a habeas corpus petition under 28 U.S.C. § 2254 to challenge his conviction for conspiracy to commit murder under Case No. 41D02-1110-FC-83. ECF 1. On Smithers' motion, the court appointed counsel on his behalf, and Smithers, by appointed counsel, filed the traverse. ECF 20, ECF 21, ECF 46.

In deciding this habeas petition, the court must presume the facts set forth by the state courts are correct unless they are rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Court of Appeals of Indiana summarized the evidence presented at trial:

> Between November 24 and 27, 2000, Smithers was babysitting for five-year-old S.M. and made her watch a pornographic movie. During that same time period, Smithers also pulled down his pants, put his penis in S.M.'s mouth, rubbed his penis on S.M.'s buttocks, and touched S.M.'s vaginal area. Thereafter, the State charged Smithers with Count I, child molesting as a class A felony; Count II, child molesting as a class C felony; Count III, child molesting as a class C felony; and Count IV, dissemination of matter harmful to minors as a class D felony in cause number 41D03–

0012–CF–194 ("Cause # 194"). The State also filed a motion for a protective order on behalf of S.M., and the trial court granted it.

Around August 27, 2001, while Smithers was incarcerated in the Johnson County Jail on the charges in Cause # 194, he entered into an agreement with fellow inmate, Codell Wombles, for Wombles to murder S.M. Smithers drew a map showing where S.M. lived and gave it to Wombles, described S.M.'s appearance to Wombles, and gave Wombles some money. On August 31, 2001, the State charged Smithers with conspiracy to commit murder as a class A felony under cause number 41D03–0108–CF–126 ("Cause # 126").

On November 20, 2002, Smithers entered into a plea agreement with the State on Cause # 126. Smithers agreed to plead guilty as charged, and the State agreed to open sentencing by the trial court. That same day, the trial court held a hearing, and Smithers pleaded guilty to conspiracy to commit murder as a class A felony.

On December 5, 2002, Smithers entered into a plea agreement with the State on Cause # 194. Smithers agreed to plead guilty to Count I, child molesting amended to a class B felony, and to Counts II, III, and IV as charged, and the State agreed to make the following sentencing recommendations: (1) open sentencing on all counts; (2) sentences on Counts I through IV be served concurrently to each other; and (3) the sentence imposed be served consecutively to the sentence in Cause # 126. That same day, the trial court held a hearing, and Smithers pleaded guilty to the three child molesting charges and the dissemination of matter harmful to minors charge.

* * *

The trial court then sentenced Smithers to fifty years on his class A felony conspiracy to commit murder conviction in Cause # 126. In Cause # 194, the trial court sentenced Smithers to twenty years with two years suspended on his class B felony child molesting conviction, eight years on each of his class C felony child molesting convictions, and three years on his class D felony conviction. Then, pursuant to the plea agreement, the trial court ordered that the four counts in Cause # 194 be served concurrently to one another and that that sentence be served consecutively to the sentence in Cause # 126, for a total sentence of seventy years. Thereafter, the trial court ordered that Smithers serve a sixty-eight year executed sentence in the Indiana Department of Correction and two years suspended.

ECF 11-4 at 2-7; *Smithers v. State*, 858 N.E.2d 695 (Ind. App. 2006).

On December 12, 2006, the Court of Appeals of Indiana affirmed the sentence on direct appeal, and Smithers did not file a petition to transfer to the Indiana Supreme Court. ECF 11-1 at 4. On June 16, 2011, Smithers initiated post-conviction proceedings in the Johnson Superior Court, but the court summarily denied the petition. PCR App. 24-29, 53-55. On November 10, 2011, he initiated an appeal, which culminated in the denial of a petition to transfer to the Indiana Supreme Court on December 7, 2012. ECF 11-5 at 1, 6.

On December 27, 2018, Smithers filed the petition initiating this habeas case. In the petition, Smithers asserts that he is entitled to habeas relief because the prosecution withheld material evidence regarding an informant and because his guilty plea was involuntary due to the conditions of his confinement in segregation at the Johnson County Jail. Smithers further asserts his guilty plea was involuntary because the prosecution threatened to file additional charges against him that would not have been successful and that his trial counsel was ineffective for not advising him of the futility of that threat.

<u>TIMELINESS</u>

To start, the Warden argues that the petition is untimely. The statute of limitations for habeas corpus cases is set forth in 28 U.S.C. § 2244(d)(1), which provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Based on the dates of the State court proceedings in the petition, it appears that the limitations period expired on January 26, 2008 -- one year after the expiration of his time to petition the Indiana Supreme Court on direct appeal. *See* ECF 11-1 at 4 (indicating that the Court of Appeals of Indiana affirmed the sentence on direct appeal on December 12, 2006); Ind. App. R. 57(c)(1) (petition for transfer must filed within forty-five days after adverse decision). Consequently, the petition is untimely under Section 2244(d)(1)(A). However, in Smithers' filings, he maintains that the untimely nature of the petition should be excused under the equitable tolling doctrine because his mental condition impaired his ability to pursue these claims throughout the limitations period and beyond. He also argues that his petition is timely under Section 2244(d)(1)(B) because the conditions of his confinement in segregation at the Johnson County Jail in 2001 and 2002 caused his mental condition and thus constitutes a State-created impediment that he was only recently able to overcome.

4

"[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Fla.*, 560 U.S. 631, 649 (2010). "[M]ental illness tolls a statute of limitations only if the illness in fact prevents the sufferer from managing his affairs and thus from understanding his legal rights and acting upon them." *Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir. 1996). "[T]he petitioner must provide evidence establishing that his mental issues actually impaired his ability to pursue his claims throughout the limitations period." *Conroy v. Thompson*, 929 F.3d 818, 820 (7th Cir. 2019).

Notably, there is substantial overlap with respect to Smithers' claim regarding his involuntary plea, his claim of prosecutorial misconduct, and his excuses for timeliness and procedural default. The court will discuss these overlapping procedural issues in greater detail below in tandem with the merits of the associated habeas claim. Further, because Smithers has requested an evidentiary hearing to supplement the record, the court will not make a final determination regarding timeliness here but will simply note that the record as it stands lacks sufficient evidence to find that the habeas petition is timely or that the untimeliness should be excused due to Smithers' mental condition.

## PROCEDURAL DEFAULT

Before considering the merits of a habeas petition, the court must ensure that the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). To avoid procedural default, a

habeas petitioner must fully and fairly present his federal claims to the state courts. *Boyko v. Parke*, 259 F.3d 781, 788 (7th Cir. 2001). Fair presentment "does not require a hypertechnical congruence between the claims made in the federal and state courts; it merely requires that the factual and legal substance remain the same." *Anderson v. Brevik*, 471 F.3d 811, 814–15 (7th Cir. 2006) (citing *Boyko*, 259 F.3d at 788). It does, however, require "the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings." *Lewis*, 390 F.3d at 1025 (internal quotations and citations omitted). "This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Id.* "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Id.*

Smithers presented his claims of prosecutorial misconduct and ineffective assistance of counsel to the Court of Appeals of Indiana and the Indiana Supreme Court. ECF 11-6; ECF 11-10. By contrast, he did not present his claims that his guilty plea was involuntary due to the conditions of his confinement in segregation or due to illusory threats regarding additional charges to the State courts at any level, so they are procedurally defaulted. Nevertheless, the court will consider the merits of the claim regarding illusory threats given its similarity to the ineffective assistance of counsel claim.

Smithers asserts that the court should excuse the procedural default for the claim that his guilty plea was involuntary due to the conditions of his confinement. He maintains that the mental distress caused by the conditions of his confinement at the Johnson County Jail prevented him from raising the claim during State post-conviction proceedings, which he initiated in June 2011. A habeas petitioner can overcome a procedural default by showing both cause for failing to abide by state procedural rules and a resulting prejudice from that failure. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977); *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008). Cause sufficient to excuse procedural default is defined as "some objective factor external to the defense" which prevented a petitioner from pursuing his constitutional claim in state court. *Murray v. Carrier*, 477 U.S. 478, 492 (1986). As with the timeliness issue, the court does not make a final determination on cause and prejudice here due to the pending request for an evidentiary hearing. Instead the court merely notes that the record at this time lacks sufficient evidence to find the jail conditions prevented Smithers from presenting his claim during State post-conviction proceedings, which the court will discuss in greater detail below.

Smithers further asserts that the court should excuse the procedural default because he is actually innocent of conspiracy to murder. A habeas petitioner can also overcome a procedural default by establishing that the court's refusal to consider a defaulted claim would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006). To meet this exception, the petitioner must establish that "a constitutional violation has resulted in the conviction of one who is actually innocent of

the crime." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "[P]risoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 536–37 (2006). Smithers identifies information obtained from the Codell Wombles, the jail informant, as new evidence.[1] As discussed in greater detail below, this information, even if presented in the form of admissible evidence, would not demonstrate that Smithers was actually innocent and does not excuse procedural default.

<u>STANDARD OF REVIEW</u>

"Federal habeas review . . . exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015) (quotations and citation omitted).

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> [This] standard is intentionally difficult to meet. We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions. And an

---

[1] According to an email from the State public defender's office, Wombles died in February 2019. ECF 46-2.

> unreasonable application of those holdings must be objectively
> unreasonable, not merely wrong; even clear error will not suffice. To
> satisfy this high bar, a habeas petitioner is required to show that the state
> court's ruling on the claim being presented in federal court was so lacking
> in justification that there was an error well understood and
> comprehended in existing law beyond any possibility for fairminded
> disagreement.

*Woods*, 135 S. Ct. at 1376 (quotation marks and citations omitted). To warrant relief, a

state court's decision must be more than incorrect or erroneous; it must be objectively

unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). "A state court's determination

that a claim lacks merit precludes federal habeas relief so long as fairminded jurists

could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562

U.S. 86, 101 (2011) (quotation marks omitted).

ANALYSIS

Prosecutorial Misconduct

Smithers argues that he is entitled to habeas relief because the prosecution did

not disclose material information about Wombles to Smithers. According to Smithers,

prior to his plea, Wombles told the prosecution that he had "entrapped Smithers and

had been lying about the context of the recordings made between Wombles, as a State

informant, and Smithers at the jail" and that he had "falsified the information as

provided in the Probable Cause Affidavit." ECF 46 at 4. "[T]he suppression by the

prosecution of evidence favorable to an accused upon request violates due process

where the evidence is material either to guilt or to punishment, irrespective of the good

faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

"Impeachment evidence . . . as well as exculpatory evidence, falls within the *Brady*

9

rule." *U.S. v. Bagley*, 473 U.S. 667, 676 (1985). "[F]avorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433 (1995).

According to the probable cause affidavit, on August 27, 2001, Wombles approached law enforcement to inform them that Smithers had offered him ten thousand dollars to kill the victim of his crime of child molestation as well as her sister, her mother, and her mother's former spouse. PCR Appeal App. 2-4. He also asked Wombles to burglarize his mother-in-law's residence. *Id.* Law enforcement provided Wombles with a device that allowed him to record his conversations with Smithers. *Id.* On August 28, Smithers identified the targets by name, provided an address, and promised to pay ten thousand dollars after their murders. *Id.* He said that he would not back out and advised Wombles to make it look like a robbery and to plant a black person's hair at the scene. *Id.* Wombles asked for a transfer of ten dollars to his spouse, and Smithers signed a form authorizing the transaction, which was attached to the probable cause affidavit. *Id.* He recommended that Wombles stab and burn the targets. *Id.*

On August 29, Smithers provided detailed descriptions of the targets' physical appearances and drew a map to their residence, which was attached to the probable cause affidavit. *Id.* On August 30, Smithers called Wombles, who had been released on bond. *Id.* During the recorded conversation, Smithers again described the physical

appearances of the targets and provided an address; he also informed Wombles that he

would likely not receive payment until the following year due to pending litigation. *Id.*

At the post-conviction stage, Smithers described his relationship with Wombles

as follows.

> After 3 weeks of preparation in 2001, [Wombles] entrapped [Smithers]
> into a Conspiracy to Commit Murder scam. Unable to make bond from
> the county jail, Wombles made a deal with the State to cooperate in what
> they thought was an ongoing murder for hire being sought by [Smithers].
> In exchange for release from jail on his own recognizance, Wombles wore
> a listening device to capture [Smithers] speaking about the murder for
> hire plot.
>
> What the State did not know was that Wombles had been grooming
> [Smithers] for weeks to develop a line of discussion that was pure
> nonsense and was solely designed to cloud the context of a recording. At
> first, plans to rob banks, carjack vehicles, and plots to assassinate the
> President were discussed with such a manic effort that [Smithers] paid
> little attention to Wombles when he broached the idea of killing the
> [victim of his crime of child molestation and her family]. [Smithers]
> played along just like he had done for the weeks prior so as not to upset
> Wombles who would become violent when [Smithers] didn't show
> interest in his rants. This radical behavior even included elaborate
> diagrams, lists, and the scribbling of crude maps on napkins. [Smithers]
> did not for a minute believe that Wombles had any intention of actually
> carrying out the fictional plan. The recorded conversations were just one
> in a series of fantastic nonsense conversations with a career criminal who
> was more than willing to sacrifice [Smithers].

ECF 11-6 at 6.

At the post-conviction stage, the Court of Appeals of Indiana rejected this claim,

finding that Smithers would not have had a viable claim of entrapment even with the

undisclosed information. ECF 11-9 at 3-5. For the affirmative defense of entrapment

under Indiana law, a criminal defendant must demonstrate that a law enforcement

official or their agent solicited the crime and that the defendant was not predisposed to

committing the crime. Ind. Code § 35-41-3-9. The appellate court observed that Wombles solicited the agreement to commit murder from Smithers before he began cooperating with law enforcement. ECF 11-9 at 4. It further observed that the evidentiary record contained audio recordings in which Smithers discussed the agreement with Wombles without any prompting. *Id.* at 5.

After considering this reasoning, the court finds that the State court's decision on this claim was not objectively unreasonable. Because Wombles was not a State agent when Smithers agreed to have the targets murdered, Wombles could not have entrapped Smithers into committing conspiracy to murder. ECF 11-6 at 6. The court also observes that the information on Wombles' interactions with Smithers and Smithers' subjective intent was necessarily known to Smithers, so the prosecution had no duty to disclose it. *See Petty v. City of Chicago*, 754 F.3d 416, 423–24 (7th Cir. 2014) ("To establish that evidence was suppressed, a plaintiff must demonstrate that . . . the evidence was not otherwise available to a defendant through the exercise of reasonable diligence."). While Smithers may not have known that Wombles discussed the grooming behavior with law enforcement prior to the entry of Smithers' guilty plea, the limited scope of the undisclosed information further supports that conclusion that the State court's finding on materiality was not unreasonable.

In the traverse, Smithers primarily takes issue with the State court's finding that there were no material disputes of fact, arguing that he did not receive an evidentiary hearing at the post-conviction stage to prove his allegations. However, the salient point

is that there were no disputes with respect to the material factual allegations. As noted by the Court of Appeals of Indiana:

> [Smithers'] allegation does not contradict the acknowledged evidence in the probable cause affidavit in any way that is legally important. Wombles was not a state agent when Smithers approached him, and Wombles' motive in agreeing to Smithers proposal at a moment when he was not a state agent is irrelevant to a claim of government entrapment.

ECF 11-9 at 4. In other words, on post-conviction review, the dispute centered on whether the factual allegations amounted to a valid assertion of the affirmative defense of entrapment. Though Smithers suggests that he could have obtained additional undisclosed, material, exculpatory information at an evidentiary hearing, the Johnson Circuit Court was not required to hold such a hearing absent a material factual dispute. *See* Ind. R. Post-Conviction Relief 1(4)(g) ("The court may grant a motion by either party for summary disposition of the petition when it appears from the pleadings, depositions, answers to interrogatories, admissions, stipulations of fact, and any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. . . . If an issue of material fact is raised, then the court shall hold an evidentiary hearing as soon as reasonably possible."). Moreover, given that Smithers still has not alleged facts that are both material and disputed, it is unclear how the lack of an evidentiary hearing prejudiced Smithers with respect to this claim.

Nor has Smithers demonstrated that the disclosure of the conversation between Wombles and the prosecution would have been likely to change the outcome of the case. It seems unlikely that the trial court would have allowed Wombles to articulate a

13

false legal conclusion at trial. *See* Ind. R. Evid. 704(b) ("Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case . . . or legal conclusions."). Additionally, the probable cause affidavit references other evidence that flatly contradicts Smithers' characterization of the events as entrapment, including a signed authorization form, a hand drawn map, and a recording of his call with Wombles after Wombles had been released from jail. Therefore, this claim is not a basis for habeas relief. For the same reasons, Wombles' representation that he had entrapped Smithers would not provide adequate support for Smithers' assertion of actual innocence.

Plea Negotiations

Smithers argues that his guilty plea was involuntary because the prosecution threatened to file additional charges against him that would not have been successful and that his trial counsel was ineffective for not advising him of the futility of that threat. More specifically, the prosecution threatened to file charges of conspiracy to commit arson and conspiracy to commit robbery as well as a second charge of conspiracy to commit murder. He maintains that these charges would have failed, relying on *Braverman v. U.S.*, 317 U.S. 49 (1942) for the proposition that "an agreement to commit various felonious acts is only one agreement and therefore only one chargeable conspiracy." He maintains that, as a result, he received no benefit from pleading guilty.

"Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances

14

and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). "The voluntariness of [a criminal defendant's] plea can be determined only by considering all of the relevant circumstances surrounding it." *Id.* "A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." *Id.* at 755.

To prevail on an ineffective assistance of counsel claim in the State courts, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668 (1984). The test for prejudice is whether there was a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id.* at 693. In assessing prejudice under *Strickland* "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). However, "[o]n habeas review, [the] inquiry is now whether the state court unreasonably applied *Strickland*." *McNary v. Lemke*, 708 F.3d 905, 914 (7th Cir. 2013). "Given this high standard, even 'egregious' failures of counsel do not always warrant relief." *Id.*

15

At the post-conviction stage, the Court of Appeals of Indiana rejected the ineffective assistance of counsel claim, reasoning that Smithers negotiated the charges related to conspiracy to murder along with the charges related to the child molestation and that the trial court sentenced Smithers on these charges together. ECF 11-9 at 5-6. The appellate court found that Smithers did not adequately demonstrate deficient performance because he may have received a benefit when considering the maximum possible sentences for the charges in total. *Id.* The plea agreements and the sentencing transcript reflect that Smithers negotiated the charges related to the conspiracy to commit murder and the charges related to child molestation together. Plea Tr. 40-48; Direct Appeal App. 1-14. These records further indicate that the trial court ordered his sentences for the child molestation charges to run concurrently with each other in accordance with the plea agreement. *Id.* Because the record reflects that Smithers obtained a benefit from pleading guilty and given the "doubly deferential" standard applied to State court determination on the performance of counsel, the court cannot conclude that the State court's finding on this factual issue or the ensuing conclusion that Smithers had not demonstrated deficient performance for lack of evidentiary support was unreasonable.

Moreover, it appears from the probable cause affidavit that the prosecution had evidence to show that Smithers conversed with Wombles on numerous occasions and that he asked Wombles to commit additional crimes, such as burglary and arson, or to include additional targets for murder at various times. PCR Appeal App. 2-4. Because this series of conversations could be fairly characterized as multiple agreements, this

court cannot conclude that Smithers received no benefit from pleading guilty even considering the charges related to the conspiracy to commit murder alone. Therefore, the claims that the prosecution made illusory threats or that Smithers received ineffective assistance with respect to plea negotiations are not a basis for habeas relief.

<u>Involuntary Guilty Plea</u>

Smithers argues that his guilty plea was involuntary based on the following allegations:

> Petitioner was subjected to pretrial detainment that seriously damaged his mental and physical health. Petitioner was housed in a segregation cell with no access to radio, TV, books, magazines, recreation, law library, or clocks and had almost no human contact. His fast & speedy trial request was waived without his presence or consent and subsequent pretrial hearings/continuances were held without his presence. Petitioner was housed in this manner for 22 months, and he truly believed he would die before a trial could be held.

ECF 1 at 4. He maintains that these jail conditions caused him post-traumatic stress disorder and that, as a result, he could not have raised this claim during State post-conviction proceedings in June 2011 and could not have raised this claim in a federal habeas petition until December 2018.

The record supporting these allegations consists solely of six pages of mental health documentation suggesting that Smithers has suffered emotional distress as a result of discussing or contemplating his criminal case as recently as August 2019. ECF 20-2. While this documentation lends some credence to Smithers' assertions, it is insufficient to show that Smithers could have not asserted this claim in a petition from January 2008 through December 2018. *See Conroy v. Thompson*, 929 F.3d 818, 820 (7th Cir.

2019) ("[T]he petitioner must provide evidence establishing that his mental issues actually impaired his ability to pursue his claims throughout the limitations period."). Further, the record contains no evidence to support Smithers' allegations that the conditions during his pretrial detainment were so intolerable as to render his plea involuntary or to induce post-traumatic stress disorder.

To the contrary, at the plea hearing for the charge of conspiracy to commit murder, the following interaction occurred:

> **Trial Counsel:** Due to the nature of the offense to which Mr. Smithers is pleading to today, he has asked me if he could be sent to [the Department of Correction] for safekeeping. He's under the impression that his case has drawn some news attention, some news publicity, and the nature of the charge to which he is pleading guilty today, he feels may jeopardize somewhat of his relations in his particular cell block with other inmates, and he feels that if he was at DOC for safekeeping his safety would be better served. If we could make that request of the Court.

> **The Court:** Okay, and he hasn't been at safekeeping before?

> **Trial Counsel:** He's been in general population, but most of the general population that he's in with now, he's been in for a year and most of the general population he's been in with doesn't know the nature of the charges that he's with as his case hasn't drawn any attention in the past six or seven months at least of significant value. But he does have a variety of individuals in his cell block that he feels may create a problem for him.

Plea Tr. 3-4.

Additionally, the probable cause affidavit and Smithers' description of his conversations with Wombles each contemplate a setting outside of the segregation unit with access to other inmates and news media as well as other amenities. For example, according to the probable cause affidavit, Wombles had access to meet with Smithers regularly and to exchange hand-drawn maps and cards with the targets' names and

address. PCR Appeal App. 2-4. The affidavit suggests that Smithers may have had access to a law library given his offer to pay Wombles from the proceeds of pending civil litigation. *Id.* It indicates that he had access to a telephone, which he used to call Wombles after his release, and a television and newspaper, which Wombles suggested that Smithers use to verify the completion of the murders. *Id.* Similarly, according to Smithers' allegations, Wombles discussed nonsensical schemes with him frequently, which he illustrated with a number of handwritten documents, and Smithers agreed to those plans due to concerns about the threat posed to him by Wombles' violent behavior. ECF 11-6 at 8.

On this record, the court cannot find that the jail conditions caused Smithers to enter an involuntary plea or to develop a mental illness that prevented him from raising a claim regarding an involuntary plea sooner. Acknowledging this lack of evidentiary support, Smithers, by counsel, states:

> Rules 6 and 7 of the Rules Governing Section 2254 Cases in United States District Courts provide that the court may direct discovery and expansion of the record even as an alternative to an evidentiary hearing, but in this case Smithers believes that any proceedings short of a hearing would be cumbersome, time-consuming, costly, and ultimately deficient due to the facts and circumstances presented herein.

ECF 46 at 20 n.3. In other words, Smithers seeks the opportunity to develop support through an evidentiary hearing but does not believe that conducting discovery is necessary. Significantly, the record as it stands contains minimal evidence to corroborate Smithers' allegations despite appointed counsel's review of Smithers' lengthy medical history and his inquiry with the Johnson County Sheriff's Department.

Further, Smithers represents that his ability to discuss the jail conditions and his mental health is severely limited (ECF 20; ECF 46 at 19-20), and he offers no indication as to how he would otherwise develop support for his allegations on these topics at a hearing. In sum, the record strongly suggests that the requested evidentiary hearing would be futile, so the court is not willing to grant an evidentiary hearing at this time.

Nevertheless, the court will allow Smithers one final opportunity to file a motion for an evidentiary hearing before resolving the involuntary plea claim. In that motion, Smithers should address how an evidentiary hearing would assist him in demonstrating each of the following factual issues:

- Whether the conditions of the Johnson County Jail were so intolerable as to render Smithers' guilty plea involuntary for the purpose of resolving the merits of the remaining claim;

- Whether the conditions of the Johnson County Jail caused a mental condition that prevented Smithers from raising a claim regarding the involuntariness of his guilty plea during State post-conviction proceedings for the purpose of resolving whether the court should excuse procedural default or consider the petition timely under Section 2244(d)(1)(B); and

- Whether Smithers' mental condition prevented him from filing a federal habeas petition until December 2018 for purposes of resolving whether the court should excuse the untimely nature of the petition under the equitable tolling doctrine.

For these reasons, the court:

(1) GRANTS David P. Smithers until <u>August 25, 2021</u>, to file a motion for an evidentiary hearing;

(2) CAUTIONS David P. Smithers that, if he does not respond by that deadline, the court will resolve the habeas petition based on the existing record; and

(3) DENIES as MOOT the motions to extend (ECF 43, ECF 44, ECF 45).

SO ORDERED on July 28, 2021

                              /s/JON E. DEGUILIO
                              CHIEF JUDGE
                              UNITED STATES DISTRICT COURT